Michael W. Flanigan
FLANIGAN & BATAILLE
1007 W. 3rd Ave., Ste. 206
Anchorage, Alaska, 99501
Telephone: (907)-279-9999
Facsimile: (907) 258-3804
E-Mail: mflanigan@farnorthlaw.com
Attorneys for the Plaintiff

IN THE UNITED STATES DISTRIT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JARED TUIA,<br><br>      Plaintiff,<br>vs.<br><br>ANCHORAGE POLICE DEPARTMENT and MUNICIPALITY OF ANCHORAGE,<br><br>      Defendant. | Case No. 3:19-cv-00326 HRH<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## GENERAL ALLEGATIONS

Defendants have moved for dismissal of certain of the Plaintiff's claims, on the basis of statute of limitations and the failure to exhaust administrative remedies. Although, Defendants describe their present motion as one for partial summary judgement, close inspection reveals it to be a ARCP 12(b)(6) motion to dismiss, since it does not rely on any evidence not referenced in the Plaintiff's Second Amended Complaint and relies entirely on the facts alleged in the Plaintiff's complaint as a basis for the motion, *Biotics Research Corp. v Heckler,* 710 F.2d 1375, 1379(9th Cir.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 1 OF 12

1983)(consideration of material outside the pleadings did not convert a Rule 12(b) motion into one for summary judgment).

## STANDARDS FOR REVIEW OF MOTION TO DISMISS

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir.1984). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Shah*, 797 F.2d at 745...

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) "A party may move at any time to dismiss a complaint for lack of subject matter jurisdiction." *Rubenstein v. Smith*, 132 F. Supp. 3d 1201, 1203 (C.D. Cal. 2015) (citing Fed. R. Civ. P. 12(b)(1), (h)(3)). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Here, defendant is making a factual attack. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. The court "is
FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 2 OF 12

not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). However, "a '[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)).

## RELEVANT FACTS ALLEGED IN THE PLAINTIFF'S COMPLAINT

As alleged in Plaintiff's Original, Amended and Second Amended Complaint, Plaintiffs' claims arise under the AS 18.80.220(a)(1) and Title VII of the Civil Rights Act of 1964, 42 USC §2000e-2 and the Common Law of Alaska.[1] Plaintiff's complaint alleges and Defendants have provided no evidence that contests Plaintiff's allegations that:

1. Jared Tuia is a person of color, ½ Samoan, and classified as a Pacific Islander and as such he is part of a protected minority class.
2. Jared Tuia became a police officer on the Anchorage Police Force in 1999. He served as a police officer in the Anchorage Police Department for 20 years as of November, 2019.
3. during his tenure with the Anchorage Police Department, Tuia has advanced to the rank of Lieutenant and has been recognized as performing excellent service in the various assignments he was given.

---

[1] Defendants claim it was not clear that Plaintiff was alleging claims under AS 18.80.220(a)(1) until the second amended complaint. However, the Original, Amended and Second Amended Complaints all allege Plaintiffs claims are asserted under AS 18.80.220(a)(1) in addition to Title VII.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 3 OF 12

4. Those assignments included: coordinator/instructor at the police academy; mentoring program for new officers; patrol officer supervisor, patrol officer lieutenant; commander of domestic violence unit; commander of K9 unit; commander of emergency operations; commander to community action policing; commander traffic unit, commander inspections unit, commander property crimes unit; commander of detectives vice unit and APD representative at the Kennedy v MOA trial.

5. Jared Tuia has also excelled academically, having obtained a Masters Degree in criminology and a diploma from the Police Staff and Command School at Northwestern University.

6. However, despite an excellent service record, academic achievements, many years of seniority and years in grade as a lieutenant on the Anchorage Police Force, Jared Tuia was denied a promotion to Captain in four occasions separate occasions in 2015, 2017, 2018 and 2020.

7. Instead Lieutenants with lesser time in grade and lesser qualifications were promoted instead.

8. When Tuia asked for a debriefing about why he was not promoted in 2015, he was told he could accomplish great things, "somewhere other than the APD."

9. When Tuia asked for a debriefing about why he was not promoted in 2017, no debriefing was provided. Instead he was transferred to the "property crimes division, which was struggling with a sharp increase in these types of crimes. Nevertheless, under Tuia's direction, the unit made excellent progress in finding and breaking up car theft rings, which caused a reduction in the amount of property crimes.

10. After Tuia started inquiring why he had not been promoted he started experiencing frequent transfers. Between 2015 and 2018 he was transferred more than any other Lieutenant at the Anchorage Police Department.

11. In April, 2018, other Lieutenants were promoted instead of Jared Tuia, despite the fact that his time in grade, experience and qualifications were far superior to the Lieutenants that were promoted at that time.

12. When Tuia ask for a debriefing to explain why he was not promoted for the third time, none was provided.

13. In March 2020, another Lieutenant, with far less time in grade and other qualifications was promoted instead of Tuia, who had also applied for the promotion.

14. The promotions to Captain were not based on performance evaluations because the Anchorage Police Department does not have performance evaluations.

15. Instead the evaluation process for promotion to Captain is limited to an interview process, which consists of a number of questions and is entirely subjective in nature, lending itself to discriminatory bias.

16. The U.S. Office of Equal Employment Opportunity has previously criticized the promotion practices of the Anchorage Police Department as facilitating discriminatory promotion practices.

17. Recently retired Lieutenant John McKinnon asked Deputy Chief Ken McCoy why the particular Lieutenants in the 2018 promotion to Captain process were selected

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 4 OF 12

and was told the Chief of Police knew who he was going to promote before applications were even solicited.

18. This manner of promotion to Captain is contrary to the Municipality of Anchorage's September 1, 2015 EEO/AA Policy statement, which states in part:

> In order to achieve its EEO goals, MOA will utilize AA policies to aggressively recruit and employ qualified minorities, women, veterans, persons with disabilities and other disadvantaged groups that are underutilized in the MOA workforce. MOA will also ensure that its overall employment practices and procedures are nondiscriminatory and do not adversely exclude any qualified individual from a municipal position, training of development opportunity based on factors other than the individuals merit, ability and other factors related to job performance.

19. All MOA employees are obligated to comply with the MOA's Policy/Procedure 40-16 and the EEO/AA Program to ensure that MOA employees and customers are treated in a nondiscriminatory manner. All MOA management and supervisory personnel have a responsibility to help ensure that MOA/AA policy and program is effectively implemented and that EEO matters within their respective area(s) of responsibility are promptly and appropriately addressed.…

20. Based on the circumstances of the promotions to Captain in 2015, 2017, 2018 and 2020, and the information obtained by Lieutenant John McKinnon, the Anchorage Police Department is engaging in employment practices which are either intended or have the disparate effect of violating the Municipalities 9/1/15 anti-discrimination policy, as well as State and Federal Laws against employment discrimination.

21. The APD's violation of the MOA 9/1/15 policy, and as well as State and Federal Laws against employment discrimination has the disparate effect of discriminating against Anchorage police officers on the basis of color, race and ethnicity.

22. The complained of actions of the defendants in this case, caused the Plaintiff to suffer stress, emotional distress and resulting in health problems and which caused the Plaintiff to be forced to resign from the Anchorage Police Department effective June 29, 2020.

23. Based on the circumstances, Plaintiff was constructively discharged.

24. The actions of the Defendants have caused the Plaintiff to suffer past and future economic damages and emotional distress, in an amount to be proven at trial, but in any case to exceed the jurisdictional requirements of this Court.

25. The Plaintiff timely filed a complaint with the U.S. Equal Opportunity Commission (EEOC) in Seattle, Washington, with jurisdiction over Alaska EEOC complaints, regarding the actions of the defendants complained of in this case on September 24, 2018.

26. After the defendants refused to mediate the dispute, the Plaintiff obtained a "right to sue letter" from the EEOC dated August 2nd, 2019.

27. This suit was filed less than 90 days following receipt of that letter, satisfying the procedural requirements to file this suit pursuant to 42 USC 2000e-2.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 5 OF 12

Case 3:19-cv-00326-HRH   Document 32   Filed 11/23/20   Page 5 of 12

FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

## PLAINTIFFS' REPONSE TO DEFENDANTS' MOTION

### Title VII Statute of Limitations Issues

The Defendants' motion, while not providing any admissible evidence to contest the above cited facts in the Plaintiffs' Second Amended Complaint, does allege that certain of the Plaintiff's claims, discrimination and retaliation, based on the allegations in the Plaintiff's second amended complaint, pleadings, are time barred, citing, *Raad v Fairbanks North Star Bor. Sch. Dist.*, 323 F.3d 1185, 1192 (9th Cir. 2003). Specifically Defendants argue that Title VII claims of discriminatory promotion practices and retaliation that occurred in 2015 and 2017, are time barred because the Plaintiffs' first EEOC administrative claim was filed on 9/24/2018. Defendants also argue that the "continuing violation" theory does not apply to Title VII claims of employment discrimination, not involving harassment, also citing *Raad v Fairbanks North Star Bor. Sch. Dist.*

While the Plaintiff does not contest those assertions, he would point out that the prior instances of discriminatory conduct, under Title VII, remain relevant to Plaintiff's timely Title VII claims, *Raad v Fairbanks North Star Bor. Sch. Dist.*, 323 F.3d 1185, 1192 (9th Cir. 2003):

> The failure-to-hire claims arising out of Raad's applications in 1991 and 1992 are time-barred; however, their supporting factual allegations may remain relevant to Raad's live claims… Accordingly, while these claims are not independently actionable, evidence about the District's refusal to hire Raad for a full-time teaching position in 1991 and 1992 is relevant and admissible insofar as it bears on her claim that she was discriminatorily refused a full-time position in August 1993. (citations omitted)

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 6 OF 12

FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

**AS 18.80.220(a)(1) Statute of Limitations and Exhaustion issues**

The resolution of the Statute of Limitations and Exhaustion issues in Plaintiff's Title VII claims, does not resolve the Plaintiff's claims of discriminatory promotions practices, retaliation, breach of the covenant of good faith and fair dealing and construction discharge, that arise under AS 18.80.220(a)(1) and at Alaska common law. Claims filed pursuant to AS 18.80.220(a)(1), do not statutorily require the filing of an administrative claim, as a perquisite to suit, and thus are timely if filed within 2 years of the discriminatory event, per AS 09.10.070. That clearly includes the Plaintiff's claims of discrimination, retaliation, breach of the covenant of good faith and fair dealing and construction discharge based on the 2018 and 2020 denial of promotion to Plaintiff and the aftermath of asking for an explanation.

Because Alaska's statute of limitations rules are different than the Title VII rules, the 2015 through 2017 claims of discrimination are still viable under Alaska law as explained below.

First of all, Plaintiff's claims were first filed as a Title VII EEOC claim on 9/24/2018, that was within 2 years of the 2017 non-promotion of Plaintiff. The Alaska Supreme Court has held in a discrimination case that the filing of administrative claims that put the defendants on notice of the Plaintiff's claims can toll the statute of limitations until a lawsuit is filed, which in that case was 4 years after the fact, *Beegan v State, DOT,* 195 P.3d 134, 141(Alaska 2008).

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 7 OF 12

Case 3:19-cv-00326-HRH   Document 32   Filed 11/23/20   Page 7 of 12

FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

While Defendants claim that decision may be a narrow one, limited to filing with the local Human Rights Commission, the cases cited by the Court evidenced a broad application of the rule, to any type of case where dual remedies were available, which has been applied in that manner subsequently, *Krause v Matanuska-Susitna Borough*, 229 P.3d 168, 177 (Alaska 2010):

> The equitable tolling doctrine applies to relieve a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him. The statute is equitably tolled if (1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith. The statute is tolled only when the initial remedy is pursued in a judicial or quasi-judicial forum

As the above case demonstrates, the doctrine has a much broader application and applies to any type of dual remedy situation.

Since the Plaintiff's 9/24/18 EEOC claim, which was filed in good faith, in a quasi-judicial forum, put the Defendants on notice of his claims of discrimination, and did not prejudice the defendant's ability to gather evidence, the statute of limitations was tolled during the period of time the EEOC claim was pending. The burden of proving prejudice in such circumstances is on the defendants, see *Weaver Bros., Inc. v Chappel*, 684 P.2d 123, 126(Alaska 1984) and *Estes v Alaska Ins. Guar. Assn*, 774 P.2d 1315, 1317-1318(Alaska 1989), (defendant insurers must prove prejudice to assert claim of late filed claim). Given the short period of time between the filing of the EEOC claim and the filing

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 8 OF 12

Case 3:19-cv-00326-HRH   Document 32   Filed 11/23/20   Page 8 of 12

FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

of the lawsuit in this matter, a claim of prejudice on the part of the defendants would not be credible.[2] In any case to date they have made no such assertion.

Secondly, unlike Title VII precedence, based on a different statute, Alaska has adopted a "continuing violation" theory in regard to employment claims, *Reich v Cominco Alaska, Inc.*, 56 P.3d 18, 25-26(Alaska 2002):

> The continuing violations doctrine allows plaintiffs to establish an ongoing tort through incidents that occurred before the statute of limitations period and that continued into the limitations period."

Plaintiff's original, amended and second amended complaints all alleged a "continuing violation" of Defendants duty to not discriminate in their promotion practices, stretching back in Plaintiff's case to 2015 and continuing with discriminatory promotion practices that harmed the Plaintiff in 2017, 2018 and 2020 and led to his constructive discharge. Given the allegations in the Plaintiff's complaint and Alaska's adoption of the "continuing violation" theory in employment cases, the complained of incidents of discrimination in the Plaintiff's complaint 2015-2020 re all viable regarding the Plaintiff's claims based on AS 18.80.220(a)(1). While the Defendants argue the doctrine does not apply to the facts of this case, citing *Sengupta v University of Alaska*, 21 P.3d 1240(Alaska 2001), that case is highly distinguishable on the facts.

---

[2] *Beegan v State, DOT,* 195 P.3d 134, 143(Alaska 2008): "Because Beegan filed his claim in superior court approximately nine months after the Commission issued its decision, and because his claim was equitably tolled during the pendency of the Commission proceedings, Beegan's noneconomic damages claim is not barred by the statute of limitations..."

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 9 OF 12

In *Sengupta*, the Court pointed out that the Plaintiff there was well aware of the claimed discrimination outside of the limitations period, so could not use the "continuing violation" theory to bring prior incidents outside of the limitations period into the present suit, *Sengupta,* 21 P.3d at 1249:

> [I]f a plaintiff's actions show that she knew her rights had been violated by a certain point in time, the limitations period starts running from that date. The continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate [discrimination] claim to lapse. "Here Sengupta has long felt that he has suffered discrimination — certainly before January 17, 1995, the date two years before the filing of the complaint...

The facts of the Sengupta case are in stark contrast to the facts of this case, where the promotion process was opaque, and the Plaintiff denied any explanation for why others were promoted over him. The entire process was apparently designed to avoid scrutiny and it worked until the Plaintiff learned from other Lieutenant what was really going on, as described in the following discussion of the discovery rule.

Factual issues in this case regarding the application of the discovery rule, which is applicable to discrimination cases, based on AS 18.80.220(a)(1), *Russell v Municipality of Anchorage*, 743 P.2d 372, 375(Alaska 1987). As alleged in the Plaintiff's complaint, when the Plaintiff was denied promotions in 2015 and 2017 and he requested explanations for why he was not promoted, none were given. Since the promotion process, consisting of only oral interviews, was opaque, he did not have a viable basis for claiming intentional or a process that had a disparate effect of discriminating against qualified applicants on the basis of color, ethnicity, or race until he learned from former Lieutenant John McKinnon that the promotion process (conducted via a live interview) was a sham

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 10 OF 12

Case 3:19-cv-00326-HRH   Document 32   Filed 11/23/20   Page 10 of 12

because the police chief had already decided who was going to be promoted before applications for the Captains positions were even solicited. As alleged in the Plaintiff's Complaint, McKinnon advised Plaintiff that he had learned this from questioning Deputy Chief Ken McCoy, about why certain officers were selected for promotion to captain in 2018. This new information was what prompted Tuia to file his EEOC complaint and eventually his lawsuit in State Court, because he now had a sufficient basis for challenging the Captain's promotion process of the Defendants. Under Alaska law, the discovery rule applies in discrimination cases, *Russell v Municipality of Anchorage*, 743 P.2d 372, 375(Alaska 1987). Therefore, the discovery rule permits the Plaintiff to seek recovery for the Defendant's discriminatory promotion practices in 2015 and 2017, based on information he first received in 2018 that exposed the discriminatory practices of the Defendant.

Therefore, while Plaintiff agrees that his Title VII claims are limited to the 2017 denial of a promotion, Plaintiff contends that all of his other claims based on AS 18.80.220(a)(1) and Alaska common law are viable for the reasons stated herein. Therefore, the Plaintiff requests the Court limit the dismissal of claims to the Title VII claims other than the 2017 claim.

DATED THIS 23RD DAY OF NOVEMBER, 2020.

/s/ Michael W. Flanigan, ABA #7710114
FLANIGAN & BATAILLE
1007 W. 3rd Ave., Ste. 206
Anchorage, Alaska, 99501
Telephone: (907)-279-9999
Facsimile: (907) 258-3804

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 11 OF 12

Case 3:19-cv-00326-HRH   Document 32   Filed 11/23/20   Page 11 of 12

FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

E-Mail: mflanigan@farnorthlaw.com
Attorneys for the Plaintiff

**CERTIFICATE OF SERVICE**
I hereby certify that the foregoing
Pleading was served on the following
counsel, by way of the Court's ECF system,
on the 24th day of November, 2020.

Ruth Bottstein
Meagan Carmichael
Asst. Municipal Attorneys
uslit@muni.org

_____/s/Michael Flanigan_____
FLANIGAN & BATAILLE

FLANIGAN & BATAILLE
1007 West 3rd Ave., Suite 206
Anchorage, Alaska 99501
Phone 907-279-9999
Fax 907-258-3804

Plaintiff's Opposition to Defendants' Motion for Summary Judgment
*Tuia v. MOA; et. al.*; Case No. 3:19-cv-00326 HRH - PAGE 12 OF 12